Rel: April 17, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

————————————————

### SC-2025-0902

————————————————

## B.S.H., as mother and next friend of F.W.H., a deceased minor

## v.

## Grady Scott Humphryes

### Appeal from Jefferson Circuit Court, Bessemer Division
### (CV-19-900855)

COOK, Justice.

B.S.H. and Grady Scott Humphryes, a divorced couple, shared joint

custody of their son, F.W.H., a minor.[1] Tragedy struck in September 2019 when F.W.H., while in the care of his father Grady, meandered over to a neighbor's house, gained access to her swimming pool, and drowned.

Following F.W.H.'s death, B.S.H., as F.W.H.'s mother and next friend, sued both Grady and his neighbor, Jessica June Carmichael, in the Bessemer Division of the Jefferson Circuit Court, for the wrongful death of her son. See § 6-5-391, Ala. Code 1975. Grady also filed a cross-claim against Carmichael for wrongful death. Carmichael then settled the claims and interpleaded the funds with the trial court to determine how much each parent was owed. The trial court then dismissed all the claims against Carmichael with prejudice.

B.S.H. received her half of the funds, but, after Grady pleaded guilty to criminally negligent homicide, she moved the court to give her all the funds. According to B.S.H., under Alabama law, Grady could not receive funds from a death that he had caused.

The trial court found that Alabama law did not preclude Grady's recovery and that he was entitled to the other half of the settlement

---

[1]We refer to the parties as they have referred to themselves in both the trial court and on appeal.

funds. B.S.H. has now appealed. However, as explained below, her appeal is not from a final judgment and must be dismissed.

Facts and Procedural History

After their divorce, B.S.H. and Grady shared joint custody of their son, F.W.H. On September 29, 2019, F.W.H. was visiting his father, Grady, at his home in Hueytown. At some point that day, F.W.H. wandered over to Carmichael's property, where he gained access to her swimming pool. F.W.H. was later found unresponsive in the pool, and, two days later, he died.

On October 2, 2019, B.S.H. sued both Grady and Carmichael in the trial court. In her complaint, she alleged that both Grady and Carmichael were liable for the death of F.W.H. under § 6-5-391, which provides a cause of action for the wrongful death of a minor. Grady filed a cross-claim against Carmichael under the same statute.

Because authorities were conducting an investigation into Grady regarding his son's death, Grady moved the trial court to stay the proceedings pending the outcome of that investigation. The trial court granted that motion on June 1, 2020.

Later that month, Carmichael reached an agreement with B.S.H.

3

and Grady to settle the case for $100,000 in return for releasing Carmichael from all claims against her. However, because B.S.H. and Grady had not agreed on an allocation of the settlement funds between them, Carmichael moved to interplead the funds with the trial court. The trial court granted the motion, accepted the funds, and dismissed all the claims against Carmichael with prejudice.

On September 3, 2020, B.S.H. asked the trial court to disburse $66,500 of the settlement funds to her. Her request included $33,000 for attorneys' fees pursuant to a 33% contingency-fee agreement she had entered into with her attorneys and $33,500 as her half of the remaining funds. In her motion, B.S.H. also claimed that there was a justiciable controversy as to whether Grady was eligible to receive any funds because he had recently been charged with manslaughter.

Grady responded that B.S.H.'s attorneys' fees should be based on the funds to which she is entitled and not the entire amount of the settlement funds. Therefore, Grady argued, B.S.H. should receive only $50,000. The trial court agreed and disbursed $50,000 to B.S.H., but the trial court determined that it would retain possession of the remainder of the settlement funds until Grady's criminal proceedings were resolved.

4

On August 15, 2025, Grady entered a plea agreement in which he pleaded guilty to criminally negligent homicide. After Grady entered his plea, B.S.H. moved the trial court to disburse the remainder of the funds to her. According to B.S.H., "[u]nder Alabama law, Grady … cannot be an heir to the Estate of F.W.H. or otherwise receive a financial benefit from the death of F.W.H."

Grady opposed that motion and filed his own motion asking that the remaining $50,000 be disbursed to him, citing § 43-8-253(a), Ala. Code 1975, in support of his position. That statute prohibits an heir from receiving the benefits of intestate succession if that heir "feloniously and intentionally kills the decedent." Because the crime to which he had pleaded guilty was not felonious and intentional, Grady argued, he was not prohibited from receiving the remainder of the funds.

The trial court agreed. It denied B.S.H.'s motion and granted Grady's motion. Specifically, the trial court found that "[t]he parties resolved the claims against Defendant Carmichael" and that Alabama law "does not prohibit [Grady] from receiving a portion of the settlement proceeds." In the final line of its order, the trial court stated that "[a]ll other issues are reserved for final trial and/or further hearing."

5

B.S.H. thereafter filed a motion to stay disbursement of the funds to Grady pending appeal, which the trial court granted. She then filed the present appeal with our Court.

## Standard of Review

When facts are undisputed, as they are here, "'this Court must determine whether the trial court misapplied the law to the undisputed facts, applying a de novo standard of review.'" Wood v. Wayman, 47 So. 3d 1212, 1215 (Ala. 2010) (quoting Continental Nat'l Indem. Co. v. Fields, 926 So. 2d 1033, 1035 (Ala. 2005)).

## Discussion

B.S.H. raises a single argument on appeal: that Alabama common law and public policy prohibit Grady from receiving any settlement funds for a wrong he caused. However, we must first determine whether this Court has jurisdiction over the appeal before we can consider the merits of B.S.H.'s argument. Richey v. Morris, 389 So. 3d 347, 348 (Ala. 2023). For this Court to exercise jurisdiction, the appeal must be from a final judgment or from a judgment certified as final under Rule 54(b), Ala. R. Civ. P. Foster v. Greer & Sons, Inc., 446 So. 2d 605, 609-10 (Ala. 1984). Because the issue of the finality of a judgment being appealed from is a

6

jurisdictional question, we may consider that issue regardless of whether the parties have raised it. Ex parte Eustace, 291 So. 3d 33, 36 (Ala. 2019) (noting that this Court "addresses ex mero motu" the lack of jurisdiction when an appeal is from a nonfinal judgment).

A final judgment is one that "conclusively determines the issues before the court and ascertains and declares the rights of the parties involved." Bean v. Craig, 557 So. 2d 1249, 1253 (Ala. 1990). In general, "'a trial court's order is not final [for purposes of appeal] unless it disposes of all claims as to all parties.'" First Commercial Bank of Huntsville v. Nowlin, 122 So. 3d 829, 831 (Ala. 2013) (citation omitted). In other words, a final judgment "is one that puts an end to the proceedings between the parties ... and leaves nothing further for adjudication." Ex parte Wharfhouse Rest. & Oyster Bar, Inc., 796 So. 2d 316, 320 (Ala. 2001).

In her complaint, B.S.H. alleged two wrongful-death claims -- one against Grady and one against Carmichael. Grady, in turn, alleged a cross-claim against Carmichael for wrongful death. In its order, the trial court found that "[t]he parties resolved the claims against Defendant Carmichael" but that "[a]ll other issues are reserved for final trial and/or

7

further hearing." That means B.S.H.'s original wrongful-death claim against Grady remains pending. Because the trial court has expressly acknowledged that it has not adjudicated "'all claims as to all parties,'" Nowlin, 122 So. 3d at 831, its order is not final, and we lack jurisdiction. Accordingly, we must dismiss this appeal.

APPEAL DISMISSED.

Stewart, C.J., and Wise, Sellers, and Parker, JJ., concur.